## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| COMMITTEE TO SAVE THE DERRY RAIL TRAIL TUNNEL and<br><br>RAILS TO TRAILS CONSERVANCY,<br><br>       Plaintiffs,<br><br>  v.<br><br>SHAILEN BHATT, FEDERAL HIGHWAY ADMINISTRATION, ADMINISTRATOR,<br><br>PATRICK BAUER, FEDERAL HIGHWAY ADMINISTRATION, NEW HAMPSHIRE DIVISION, ADMINISTRATOR, and<br><br>WILLIAM CASS, NEW HAMPSHIRE DEPARTMENT OF TRANSPORTATION, COMMISSIONER,<br><br>       Defendants. | Civil Action No. 1:24-cv-262 |

## **COMPLAINT**

1.    Plaintiffs Committee to Save the Derry Rail Trail Tunnel and the Rails to Trails Conservancy file this case to protect an important New Hampshire historical resource, the 175-year-old Manchester and Lawrence Railroad ("M&L Railroad"), and to ensure its continued relevance as a vision of the past and a continuing means of transportation and recreation for future generations of Granite Staters. The M&L Railroad, a feat of engineering built nearly two centuries ago, played a vital role in connecting the Granite State with the rest of New England and the country before its abandonment in the 20th century.

2.    Today, the efforts of engineering and labor that once served generations of rail passengers have renewed relevance as the site of a recreational multi-use rail trail providing

1

recreation and transportation opportunities for the community. As one of a dwindling number of railroad rights-of-way left in the state, the historic features of the M&L Railroad—its gentle curves, moderate slopes, and separation from car traffic—make it ideally suited for cyclists and pedestrians. The recreational trail, in turn, protects the historic right-of-way from future development while allowing thousands of weekly visitors to appreciate the engineering and history of the M&L Railroad.

3.      The New Hampshire Department of Transportation ("NHDOT") is currently engaged in a project that threatens the historical integrity of the Manchester and Lawrence Railroad Historic District ("M&L Railroad Historic District"). NHDOT is using federal funds to build a new exit on Interstate 93 in Londonderry, as well as various local roads to connect the new exit to the towns of Londonderry and Derry (the "Project"). As part of this Project, a substantial new six-lane local road, Folsom Road, will be built atop and across the M&L Railroad Historic District, despite its protection by law as a historic property. The construction of the Project will thus cause significant harm to the M&L Railroad Historic District.

4.      A federal law known as Section 4(f) of the Department of Transportation Act ("Section 4(f)") prohibits the use of historic properties, like this one, in federally funded transportation projects unless there is no feasible and prudent alternative and, even then, only if the project includes all possible planning to minimize harm to the historic property. 23 U.S.C. § 138(a)(3); 49 U.S.C. § 303(c).

5.      In 2020, the Federal Highway Administration ("FHWA") approved NHDOT's proposed design for the Project, in part because NHDOT committed to building an underpass under Folsom Road where it crosses the M&L Railroad Historic District. The underpass would facilitate the planned extension of the Derry Rail Trail, a mixed-use trail that currently terminates

just south of the future Folsom Road crossing, along more of the former railroad right-of-way. FHWA recognized that the underpass would minimize harm to the historic property and thus satisfy the requirements of Section 4(f).

6.      Nevertheless, in 2024, FHWA approved NHDOT's revised request to remove the Folsom Road underpass from the proposed design and replace it with a steeply graded, meandering path that ignores and destroys the essentially flat, linear historic transportation corridor that has been present in that location for 175 years.

7.      Because Section 4(f) prohibits using federal funds for the modified design, this Court should vacate FHWA's 2024 approval and enjoin FHWA and NHDOT from financing or constructing the revised project.

## **PARTIES**

8.      Plaintiff Committee to Save the Derry Rail Trail Tunnel (the "Committee") is a New Hampshire non-profit corporation. Formerly the Ad Hoc Coalition to Save the Derry Tunnel, the Committee formed in 2022 and was incorporated in 2024. Its purpose is to preserve the M&L Railroad Historic District, including the planned extension of the Derry Rail Trail, by supporting the construction of the underpass under the new Folsom Road near Derry, New Hampshire.

9.      Plaintiff Rails to Trails Conservancy ("RTC") is a District of Columbia non-profit corporation with over 101,000 members nationwide, including over 2,500 members in New Hampshire. Founded in 1986, RTC is dedicated to preserving disused railroad corridors for alternative and future public uses, including use as trails. Rails-to-trails conversions provide compatible adaptive re-uses of historic rail corridors, preserving historic features such as tunnels, trestles, bridges and the rail bed that might otherwise be destroyed when the corridors are

3

abandoned. RTC has provided financial and organizational support toward efforts to advance the Granite State Rail Trail ("GSRT"), a developing 125-mile cross-state trail that will span from the Massachusetts border to Vermont, of which the Derry Rail Trail is a critical link.

10.     Members of the Committee and RTC have advocated for the preservation of critical portions of the M&L Railroad Historic District for continued public use and enjoyment as a historic property and trail. These members would have standing to sue in their own right for the reasons stated below, among others. The interests of the Committee, RTC, and their members fall within the zone of interest protected by the laws sought to be enforced in this action.

11.     Specifically, members of the Committee and RTC have been actively involved in community organizing and administrative advocacy to preserve the integrity of the M&L Railroad Historic District and to secure the inclusion of the Folsom Road underpass in NHDOT's construction of Exit 4A on Interstate 93 and related local roads, including the new Folsom Road. Several members participated actively as consulting parties in the National Historic Preservation Act ("NHPA") Section 106 process for the Project and otherwise submitted comments during the Project's development.

12.     In addition, members of the Committee and RTC use, enjoy, and appreciate the M&L Railroad Historic District for a variety of activities including transportation, walking, bicycling, and studying and appreciating the history of the railroad corridor. Their interests in preserving and protecting this historic district for their present and future use will be harmed by the Project as presently approved.

13.     For example, Catherine McDonald is a Derry resident, a member of RTC, and a founding member of the Committee. Ms. McDonald regularly walks and bicycles through the M&L Railroad Historic District, including the portion that hosts the Derry Rail Trail, and has

walked the undeveloped portions of the right-of-way that will be used by the project. She enjoys being able to connect to the history of her hometown while tracing the path of the historic right-of-way and plans to do so along the entire length of the M&L Railroad Historic District if the underpass is constructed. Ms. McDonald will not be able to experience the same connection on a steeply graded and twisted route that significantly deviates from the historic right-of-way. The proposed action eliminating the underpass will therefore harm his use and enjoyment of the M&L Railroad Historic District.

14.    David Topham is a Salem resident, a member of RTC since 2010, and a founding member of the Committee. Mr. Topham has a lifelong interest in railroad history and is a member of the New Hampshire Cultural Resources Agency and the Boston & Maine Railroad Historical Society. Mr. Topham recalls travelling with his father on the M&L Railroad branch in the 1950s. Today, Mr. Topham regularly uses the M&L Railroad Historic District, including the historic district's existing bicycle infrastructure, for recreation and to experience travel along the historic right-of-way. Mr. Topham plans to use any future expansion of the rail trail along the M&L Railroad Historic District that incorporates an underpass along the right-of-way and that preserves the sight lines and slopes of the historic corridor. The proposed action eliminating the underpass will therefore harm his use and enjoyment of the M&L Railroad Historic District.

15.    Defendant Shailen Bhatt is named here solely in his official capacity as Administrator of FHWA. In his official capacity, Administrator Bhatt is responsible for the administration, operations, and activities of federal highway programs, including those programs' compliance with Section 4(f), under a delegation from the Secretary of Transportation. *See* 49 C.F.R. § 1.85(a)(1).

16.     Defendant Patrick Bauer is named here solely in his official capacity as Administrator of the New Hampshire Division of the FHWA. In that capacity, Administrator Bauer is responsible for carrying out the Section 4(f) review for the Project.

17.     Defendant William Cass is named here solely in his official capacity as Commissioner of the New Hampshire Department of Transportation ("NHDOT"). In that capacity, Commissioner Cass is responsible for the design and construction of the Project. He has solicited federal funding for the Project and has worked in partnership with FHWA in developing and selecting the design of the Folsom Road crossing and in proposing the elimination of the underpass from the design.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1361, and 5 U.S.C. §§ 701-706.

19.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS

### The Manchester & Lawrence Railroad Historic District

20.     The M&L Railroad Historic District extends about 22 miles from Manchester to the state line in Salem.

21.     The M&L Railroad was chartered on July 31, 1847. Built to compete with the Concord Railroad, it opened for passenger travel in 1849 with stations at Salem, Windham, Derry, Londonderry, and Manchester. In 1887, the M&L Railroad became part of the Boston and Maine Railroad.

22.     The railroad's construction was difficult and was considered a feat of engineering in its day. Largely done by Irish laborers, it required cuts through granite ledge with hand tools and blasting with black powder.

23.     Illustrations and postcards from the 19th and early 20th centuries reflect the importance of the M&L Railroad to the town of Derry and document the substantial engineering required to create a level right-of-way in the vicinity of what is now Madden Road, the site of NHDOT's proposed Folsom Road crossing.

24.     For example, a postcard printed around 1907, and archived on the Nashua City Station railroad history website, shows a Boston & Maine Railroad train stopped at the Derry Station, approximately half a mile from the proposed Folsom Road crossing. The historic Derry Station, visible at the far left of the postcard, still stands today and houses a restaurant.



25.     Another postcard from around 1909 shows the large earthwork viaduct constructed by the railroad across Horne's Pond, approximately 600 yards south of the proposed Folsom Road crossing.



26.     The proposed Folsom Road crossing itself appears in an illustrated map of the

Derry Depot neighborhood printed in 1887. The illustration shows the railroad crossing over

North High Street before passing under a trestle bridge (marked with arrow) carrying Madden

Road, at the time simply known as the "highway" to Londonderry.[1]



27.     The M&L Railroad was eventually consolidated with the Boston & Maine

Railroad. As part of that larger system, the M&L Railroad served important local needs, carrying

freight from local businesses, including milk from H.P. Hood & Sons, located in Derry, and the

products of Londonderry's largest business, the Annis Grain and Lumber Company.

28.     By the late 1930s, passenger service had dwindled to one daily roundtrip on a

single, self-propelled passenger car. Regular passenger service ended in July 1953. All train

---

[1] Following the construction of I-93 in the mid-20th century, the former "highway" crossing
became a dead-end road named Madden Road, and the trestle was replaced with a metal culvert.
NHDOT's proposed six-lane arterial Folsom Road will replace Madden Road.

service ended entirely in about 1980, and a substantial portion of the tracks was removed over time in the 1980s and 1990s.

29.     Since then, sections of the right-of-way have already been lost to development, including to a runway expansion at Manchester-Boston Regional Airport in the late 1990s that completely obliterated a portion of the historic railroad.

30.     In 2009, the New Hampshire Division of Historical Resources ("NHDHR") determined that the remaining portions of the M&L Railroad were eligible for the National Register of Historic Places (the "National Register") as the M&L Railroad Historic District (the "District"), comprising about 200 acres.[2] This evaluation was conducted as part of the Section 4(f) mitigation measures identified for a separate I-93 widening project that began in 2006. The District consists of the M&L Railroad corridor from the New Hampshire/Massachusetts state line in Salem to the Manchester-Boston Regional Airport. It also includes contributing historic train stations in Derry, Salem, and Windham.

31.     NHDHR recognized, in conferring this status, that the M&L Railroad "made a significant contribution to the history and development of the five New Hampshire communities that it passed through—Salem, Windham, Derry, Londonderry, and Manchester. The rail line connected the residents of the small communities with larger cities and provided a critical and convenient transportation route for local agricultural products and manufactured goods, passengers and mail."[3] It further recognized that "the buildings and structures which survive

---

[2] As a result of that determination, the historic railroad is protected from destructive transportation projects by Section 4(f), which protects, among other things, any "historic district … included in, or eligible for inclusion in, the National Register." *See* 23 C.F.R. § 774.17.

[3] New Hampshire Department of Historical Resources, Determination of Eligibility, Manchester & Lawrence Railroad at 28 (July 14, 2009) (attached as Exhibit 1).

today constitute a significant concentration of resources illustrative of railroad engineering and architecture from the mid 19th to early 20th century."[4]

32.     NHDHR also recognized that the M&L Railroad "retains some integrity of materials, design, workmanship, feeling, setting and association," in part because "the right-of-way is still generally recognizable as a contiguous transportation corridor."[5] It concluded: "Overall the quality and quantity of historic features on the line is high and taken together the remaining resources aptly illustrate the variety of railroad resources used from the line's construction in 1849 to the mid 20th century."[6]

33.     For example, one such historic feature that remains just north of the proposed Folsom Road crossing is a historic "tell-tale" device, a structure used to warn railroad workers riding atop railcars of the approaching low crossing under the former trestle bridge at Madden Road.

**The Derry Rail Trail**

34.     In the 21st century, portions of the M&L Railroad Historic District were developed by local and state authorities into a paved recreational path, with plans to incorporate the entire railroad into the statewide network of rail trails. As RTC explains, repurposing historic railroad rights-of-way for recreational trails "can aid in the preservation of historically significant locations and routes" and enhance historic sites by providing an "opportunity to physically experience places where historical events occurred."[7] NHDOT itself has stated that rail trails

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Rails to Trails Conservancy, *Historic Preservation and Community Identity*, available at https://www.railstotrails.org/resource-library/resources/historic-preservation-community-identity/.

"provide an attractive way for a variety of users to experience New Hampshire's natural and historic resources."[8]

35.     Construction on the Derry portion of the rail trail, known as the Derry Rail Trail, began in 2009. At present, the finished portion of the Derry Rail Trail extends from the town border with Windham two miles north along the M&L Railroad right-of-way, terminating at the North High Street crossing at the southern edge of the Project site. The unfinished portion of the trail affected by the Project will extend one mile along the M&L Railroad right-of-way between the North High Street crossing and the intersection with Rockingham Road in Londonderry, where it would reach the existing Londonderry Rail Trail. Both the towns of Londonderry and Derry have concrete plans to complete this section of the trail as early as 2025.

36.     Once completed, the Derry Rail Trail will serve as part of a statewide network of recreational rail trails. Completion of the Derry Rail Trail would link the two most heavily used rail trails in the state, according to NHDOT data. A 2022 NHDOT study reported that the Windham Rail Trail sees an estimated 241,500 annual trips, with an additional 163,000 annual trips on the Londonderry Rail Trail. In addition, the finished Derry Rail Trail would complete a key link in the GSRT, which in turn will link the six New England states in a continuous regional network of multipurpose recreation trails known as the New England Rail-Trail Spine Network. To date, more than 76 miles of the 115-mile GSRT have been constructed, and the completed Derry Rail Trail will comprise one of the highest-use sections, with many thousands of anticipated users, and close one of the few remaining gaps between the Connecticut River and the Massachusetts border. The GSRT incorporates and connects several historic railroad rights-

---

[8] NHDOT, *New Hampshire Rail Trails Plan* at 106 (2022), available at https://www.dot.nh.gov/sites/g/files/ehbemt811/files/imported-files/2022-nh-rail-trail-plans.pdf.

of-way. In addition to its already-completed portions on the M&L Railroad, the Northern Rail Trail portion of the GSRT utilizes the Northern Railroad right-of-way, itself also eligible for listing on the National Register of Historic Places.

37.     Like many others in the local community, members of the Committee and RTC regularly use the existing sections of the Derry Rail Trail for transportation, recreation, exercise, and enjoyment of the history of the M&L Railroad. Members of the Committee and RTC, including Catherine McDonald and David Topham, plan to use any future expansion of the Derry Rail Trail that is safe to use and preserves the M&L Railroad's historic alignment.

**The Original Exit 4A Project**

38.     NHDOT has proposed the construction of a transportation project that significantly threatens the historical integrity and recreational use of the M&L Railroad Historic District and the Derry Rail Trail. The Project includes the construction of a new exit, Exit 4A, on Interstate 93 in Londonderry and the construction and expansion of associated local roads in the Towns of Derry and Londonderry.

39.     One such local road, planned to have six travel lanes and to be called Folsom Road, is proposed to be constructed within and upon the M&L Railroad Historic District. It will cross the District at what is now Madden Road, replacing the existing dead-end, two-lane street with a six-lane arterial road.

40.     Section 106 of the National Historic Preservation Act, 54 U.S.C. § 306108, required the consideration of any adverse effects the Project may have on the M&L Railroad Historic District. Section 106 requires agencies to consider the effects of federally funded or licensed projects on historic properties and to consult with expert preservation agencies, interested parties, and the public before a final decision is made.

13

41.     On August 13, 2019, as part of the Section 106 process, NHDOT, NHDHR, and FHWA executed an Adverse Effect Memo for the Project that described adverse effects on the M&L Railroad Historic District "due to the modern intrusion within the National Register boundary of the rail corridor and consequent realignment of the rail corridor." The Adverse Effect Memo described "the installation of a pedestrian/bicycle culvert … that would accommodate the proposed realigned right-of-way (ROW) for the potential future expansion, by others, of the Derry Rail Trail adjacent to the M&L corridor" and indicated that the Project might include "[w]ork with the town and their heritage commission on the look of the new underpass."

42.     On October 29, 2019, NHDOT, NHDHR, FHWA, and the Town of Derry completed the Section 106 process by executing a Memorandum of Agreement that included, as a measure to mitigate harm to the M&L Railroad Historic District, "work with the Town of Derry on the aesthetic treatment to the newly constructed underpass headwalls."

43.     On February 3, 2020, NHDOT issued a Final Environmental Impact Statement and Record of Decision ("2020 FEIS/ROD") for the Project pursuant to the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq*. That document included a comparison of various alternative designs for the Project. Its selected alternative, Alternative A, "includes a [road] corridor that is approximately 3.2 miles in length between the new, proposed I-93 Exit 4A interchange and eastern Derry," as well as "approximately 1 mile of roadway construction on a new alignment and 2.2 miles of existing roadway reconstruction."

44.     According to the 2020 FEIS/ROD, "FHWA identified Alternative A as the Selected Alternative based on the results of engineering, environmental, and socioeconomic studies. Alternative A represents a balance of traffic performance, economic development potential, and environmental impact considerations."

45.     The 2020 FEIS/ROD explicitly identified the M&L Railroad Historic District as a resource "subject to Section 4(f)" due to its eligibility for the National Register. The 2020 FEIS/ROD recognized that Alternative A would "have an adverse effect on M&L Railroad Historic District due to the modern intrusion within the National Register boundary of the rail corridor and consequent realignment of the historic corridor." However, it concluded that "there are no feasible and prudent alternatives that do not require the use of Section 4(f) properties" and thus selected Alternative A despite its use of the M&L Railroad Historic District.

46.     The 2020 FEIS/ROD also recognized that, because the Project used a Section 4(f) property, it would be required under Section 4(f) to include "all possible planning to minimize harm."

47.     To evaluate the Project's compliance with Section 4(f), the 2020 FEIS/ROD included a "Programmatic Net Benefit Section 4(f) Evaluation." That portion of the document stated that the Project included "all appropriate measures to minimize harm and subsequent mitigation necessary to preserve and enhance those features and values of the property that originally qualified the property for Section 4(f) protection."

48.     Specifically, the 2020 FEIS/ROD explained that the Project "would incorporate mitigation measures to preserve and enhance the railroad corridor's historic features and qualities," including a measure to "[e]ncourage preservation of the rail corridor by constructing an underpass and 900-foot path" that would "enable trail construction to the north as part of a separate future project by others, which in turn will help protect more of the historic district from other development." According to the 2020 FEIS/ROD, the M&L Railroad Historic District would be "enhanced by the construction of a suitably designed underpass that is complementary to the historic railroad corridor. With incorporation of these measures, the Project would

15

preserve and enhance the historic features and values of the rail corridor, resulting in a net benefit use."

49.     The figure below depicts elements of Alternative A as originally designed ("the 2020 Design"). It shows the M&L Railroad Historic District in brown, the proposed Derry Rail Trail in green, and the proposed underpass beneath Folsom Road outlined in dark green.



50.     The 2020 FEIS/ROD explained that the 2020 Design would provide "accommodation for a possible future expansion of the Rail Trail by others … facilitated by the construction of an underpass under Madden Road and [the] provision of a 900-foot paved path connection to the former railroad ROW north of Madden Road that would allow the future proposed expansion of the Rail Trail to cross under Madden Road and back to the former railroad ROW, about 300 feet north of Madden Road."

51.     The 2020 FEIS/ROD determined that the 2020 Design complied with Section 4(f) "due to its measures to minimize harm to the historic district by allowing the continuity of the M&L Railroad, even if off-alignment," because of the underpass.

52.     As the 2020 FEIS/ROD repeatedly reiterated, the underpass included in the 2020 Design was the key measure minimizing harm from the Project's use of the M&L Railroad Historic District by providing a grade-separated path that preserved the essentially flat, linear nature of the former railroad, which the 2020 FEIS/ROD refers to as the District's "continuity," facilitating the expansion of the recreational trail—which, in turn, would protect the historic district from further development.

53.     The inclusion of the underpass in the 2020 Design was thus essential to the Project's compliance with Section 4(f)'s requirement that the Project include "all possible planning to minimize harm."

54.     The 2020 FEIS/ROD did not evaluate a version of Alternative A without the underpass.

**The Modified Exit 4A Project**

55.     At some point after the 2020 FEIS/ROD was signed, despite the extensive public process that had led to the 2020 Design, NHDOT decided to propose a new design ("the 2024 Design") that would expand the new Folsom Road crossing of the District from five to six lanes of vehicle traffic and eliminate the trail underpass from the Project. In place of the underpass, NHDOT proposed including in the 2024 Design two new elements that had never before been proposed or considered.

56.     First, NHDOT proposed to add "a signalized at-grade path that generally follows the linear alignment" of the historic M&L Railroad corridor by "run[ning] parallel to North High

17

Street, cross[ing] over Folsom Road at a signalized crossing and continu[ing] north of Folsom Road." In other words, this path would cross the new Folsom Road's six lanes of traffic using a crosswalk, rather than tunneling underneath it, and trail users would have to wait at the crosswalk intersection for a walk signal rather than experience a continuous, uninterrupted, and protected journey along the rail corridor.

57.     In addition, because Folsom Road will be constructed approximately 10 feet above the railroad right-of-way, this "signalized at-grade path" would require steep grades (up to 4.36 percent) along the right-of-way both north and south of Folsom Road, a striking visual and topographic departure from the presently virtually flat M&L Railroad Historic District. The historic "tell-tale" device would also be reinstalled along this path. However, while the underpass would complement the "tell-tale" device by providing a visual illustration of its historic function as a warning for overhead structures, placing it near the proposed crosswalk would provide trail users no reference for the purpose of the "tell-tale."

58.     Second, NHDOT proposed to add "a grade-separated option … following the multi-use path east along Folsom Road and under the Shields Brook crossing." Because of its unnecessary, undesirable, and unsafe twists and turns, this element of the 2024 Design is commonly referred to as the "spaghetti alternative." The "spaghetti alternative" path would not follow or resemble the historic corridor and instead would involve a 180-degree hairpin turn, two 90-degree turns, and grades as high as 4.86 percent. Moreover, despite NHDOT's description, this element would not in fact be "grade-separated" from vehicle traffic, as it includes a 350-foot segment along the sidewalk of Folsom Road, and bicyclists and pedestrians, including children, would need to cross Ferland Drive, a two-lane roadway, using a crosswalk.

59.     In addition to the dramatic departure from the historic right-of-way, the 2024 Design violates applicable standards for the safe design of bicycle infrastructure and presents a significant safety hazard for prospective trail users. NHDOT purports to have followed the American Association of State Highway and Transportation Officials' ("AASHTO") *Guide for the Development of Bicycle Facilities*, which among other things provides that bicycle facilities should be designed "for a speed that is at least as high as the preferred speed of the fastest common user."[9] Design speeds are used to calculate minimum turn radii and other considerations necessary for users' safety. AASHTO's guidelines specifically state that design speeds for flat bicycle paths "should not be lower" than 18 miles per hour "except in rare circumstances" like approaches to crossings or conflict points; and where paths include steep declines (where AASHTO reports a "customary" cyclist will reach 20-30 miles per hour), AASHTO calls for higher design speeds of up to 30 miles per hour.

60.     Despite this clear guidance, and the absence of any "rare circumstances" justifying a lower design speed, NHDOT designed the steeply inclined "spaghetti alternative" with a design speed of just 12 miles per hour.[10] NHDOT also reduced the width of the path from the 20-foot-wide underpass design to just 10 feet—the AASHTO minimum. However, AASHTO's guidance requires more than the minimum when paths are "frequently used by both pedestrians and wheeled users" as well as on steep grades and curves. For example, at least 11

---

[9] As AASHTO notes, "Experienced/Confident Riders," a category that includes members of the Committee, may ride at speeds of up to 25 miles per hour on level grades and up to 45 miles per hour on descents.

[10] Increasing the design speed of the "spaghetti alternative" would require significant changes to its design. Applying the recommended design speed for flat terrain of 18 miles per hour instead of NHDOT's design speed of 12 miles per hour would require doubling the minimum allowable radius of the hairpin curve. Increasing the design speed to 20 miles per hour, as AASHTO recommends for steep descents, would nearly triple the radius of the hairpin.

feet is required to facilitate passing maneuvers, and an additional 4 to 6 feet should be added if, as here, a switchback is used to traverse a grade.

61.     NHDOT's failure to design the "spaghetti alternative" according to relevant engineering standards places trail users at risk. Members of the Committee and RTC, including elderly members and members with disabilities, will not be able to use the "spaghetti alternative" at all for fear of injury.

62.     The figures below compare the 2020 Design and the 2024 Design, with the M&L Railroad Historic District marked in brown. The 2024 Design, which includes the steep incline and "spaghetti alternative," bears no resemblance to the M&L Railroad's historic alignment.



**2020 Design**                    **2024 Design**

63.     The 2024 Design would eliminate the 2020 Design's grade-separated path through the underpass that preserved the essentially flat, linear nature of the M&L Railroad Historic District. In place of the tunnel, the 2024 Design places visitors to the M&L Historic

District on paths with steep grades and sharp curves far beyond what would be found on any 19th-century New England railroad, which rarely, if ever, exceeded grades of 2 percent.

64.     The stated purpose of the 2024 Design was to "be less costly to construct and maintain than what was originally proposed." However, the documentation approved by FHWA contains no information regarding the comparative cost of the modification or maintenance, nor was cost cited as a rationale for eliminating the underpass despite Section 4(f). Indeed, the documentation makes no attempt to explain how a longer, looped trail could save costs or how any cost savings, even if they existed, would justify ignoring Section 4(f)'s mandate that "all reasonable measures identified in the Section 4(f) evaluation to minimize harm or mitigate for adverse impacts and effects *must be included* in the project." 23 C.F.R. § 774.17 (emphasis added).

65.     In August 2022, NHDOT indicated publicly that the 2024 Design had been "[a]ccepted," even though no public process had been initiated to consider the new design.

66.     NHDOT later reopened the NHPA Section 106 process for the Project to consider the 2024 Design.

67.     Several of the Committee's members participated in that process as "Consulting Parties" under 36 C.F.R. § 800.2. They commented to NHDOT that the 2024 Design substantially increased the adverse effect on the M&L Railroad Historic District, including because of the additional lane of traffic and the substantial grades to be constructed on both sides of Folsom Road. They also objected that Section 4(f) prohibited the removal of the underpass, a reasonable measure to minimize harm to the M&L Railroad Historic District.

68.     In a memorandum to NHDOT dated October 24, 2023, NHDHR noted that the concerns raised by the consulting parties, including the grade and cross traffic, "could be added to the project description."

69.     On March 20, 2024, NHDOT executed a revised Adverse Effect Memo for the Project. The revised memo acknowledged that the Project continued to have an adverse effect on the Derry Trail, although it did not specifically discuss the adverse impact of increased vehicle traffic or that the grades on either side of Folsom Road worsen the adverse effect on the essentially flat, linear continuity of the M&L Railroad Historic District.

70.     On May 7, 2024, NHDOT, NHDHR, FHWA, and the Town of Derry completed the reopened Section 106 process by executing an Updated Memorandum of Agreement that deleted any reference to the underpass, including the promised mitigation measure of "aesthetic treatment to the newly constructed underpass headwalls."

71.     NHDOT also prepared a "Section 4(f) Re-Evaluation" for the 2024 Design.

72.     Although the 2020 FEIS/ROD had stated that the 2020 Design, which included the underpass, included "***all*** appropriate measures to minimize harm and subsequent mitigation necessary to preserve and enhance those features and values of the property that originally qualified the property for Section 4(f) protection" (emphasis added), the 2024 Section 4(f) Re-Evaluation states that the 2024 Design "would incorporate mitigation measures to preserve and enhance the railroad corridor's historic features and qualities."

73.     Although the 2024 Section 4(f) Re-Evaluation makes the conclusory statement that the 2024 Design "includes all possible planning to minimize harm to the Section 4(f) property," it did not even attempt to analyze or explain how the 2024 Design could include ***all***

possible planning to minimize harm when a previously adopted measure designed to mitigate the Project's harm to the M&L Railroad Historic District had been removed.

74.     On May 13, 2024, NHDOT submitted documentation of the 2024 Design to FHWA for its approval, stating that "the Department believes that the February 3, 2020 Record of Decision remains valid." These materials were not made public before their submission to FHWA.

75.     On the same day, May 13, 2024, Administrator Bauer wrote to Commissioner Cass that FHWA had "reviewed the NEPA Re-evaluation documentation" and "concur[red] that although additional analysis was required [to] update the environmental impact analysis, including the previous Section 106 Adverse Effects determination, Section 106 MOA, and Section 4(f) Net Benefit programmatic finding, the re-evaluations demonstrate that the differences between the current Proposed Action and the 2020 FEIS Selected Alternative do not result in significant new environmental impacts not previously evaluated in the 2020 FEIS and that a Supplemental EIS is not necessary." Administrator Bauer wrote that his letter "complete[d] the NEPA Re-evaluation process for the subject design changes."

76.     On information and belief, FHWA's approval of the 2024 Section 4(f) Re-Evaluation is the final step of FHWA's review of the 2024 Design's compliance with Section 4(f).

## CAUSE OF ACTION
## Section 4(f) of the Department of Transportation Act

77.     Plaintiffs reallege and incorporate each and every allegation contained in the preceding paragraphs.

78.     Section 4(f) of the Department of Transportation Act provides, in relevant part, that the Secretary of Transportation:

*shall not approve* any program or project ... which requires the use of ... any land from an historic site of national, State, or local significance as so determined by such officials *unless* (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes *all possible planning to minimize harm* to such ... historic site resulting from such use.

23 U.S.C. § 138(a)(3) (emphasis added); *see also* 49 U.S.C. § 303(c).

79.     FHWA regulations further define the term "all possible planning" to mean "that all reasonable measures identified in the Section 4(f) evaluation to minimize harm or mitigate for adverse impacts and effects *must be included* in the project." 23 C.F.R. § 774.17 (emphasis added).

80.     Under FHWA regulations, a resource is a site of national, State, or local significance subject to Section 4(f) requirements if it is a "historic site[] on or eligible for the National Register," unless FHWA determines that an exception applies. 23 C.F.R. § 774.11(e).

81.     NHDHR has determined that the M&L Railroad Historic District is eligible for the National Register, and the M&L Railroad Historic District is therefore a site of national, State, and/or local significance. On that basis, Defendants have in turn determined that the M&L Railroad Historic District is a resource protected under Section 4(f).

82.     The Project requires the "use" of the M&L Railroad Historic District within the meaning of Section 4(f). *See* 23 C.F.R. § 774.17 (defining "use" to include the permanent incorporation of land into a transportation project).

83.     NHDOT correctly determined in both the 2020 FEIS/ROD and the 2024 Section 4(f) Re-Evaluation that the Project would have an adverse effect on the M&L Railroad Historic District.

84.     NHDOT's 2020 FEIS/ROD correctly identified the underpass design and the future extension of the Derry Rail Trail as a reasonable measure to minimize harm and/or

mitigate adverse impacts of the Project and determined that the underpass would be included in the Project.

85.     FHWA approved the 2020 FEIS/ROD on the basis of the inclusion of the underpass in the 2020 Design.

86.     At no point did NHDOT or FHWA revisit or retract the finding that the underpass was a reasonable measure to minimize harm and mitigate adverse effects from the Project.

87.     Nevertheless, despite Section 4(f)'s clear mandate that all reasonable measures to minimize harm must be included, NHDOT then proposed and FHWA approved the 2024 Design, which removes the underpass and instead includes steep inclines, a crosswalk across six lanes of traffic, and the "spaghetti alternative."

88.     Without the underpass, the Project causes substantially greater harm to the M&L Railroad Historic District because there will no longer be a grade-separated path that preserves the essentially flat, linear nature of the district.

89.     By approving a revised Project design which omits the underpass, FHWA approved a project that failed to include all possible planning to minimize harm to the M&L Railroad Historic District, including "all reasonable measures identified in the Section 4(f) evaluation." 23 C.F.R. § 774.17.

90.     FHWA provided no rationale or justification for excluding a mitigation measure it had previously found to be reasonable and necessary to discharge its responsibilities under Section 4(f).

91.     Accordingly, FHWA's decision was arbitrary, capricious, and not in accordance with law.

92.     FHWA's May 13, 2024, approval of the 2024 Design in the NEPA Re-evaluation constitutes a final agency action under the Administrative Procedure Act. 5 U.S.C. § 704.

93.     Administrator Bhatt and Administrator Bauer should be enjoined from providing federal funding to the Project in violation of Section 4(f). Unless Administrator Bhatt and Administrator Bauer are so enjoined, Plaintiffs and their members will be irreparably harmed.

94.     Commissioner Cass should be enjoined from further planning, acquisition of right-of-way, financing, contracting, or construction of the Project in violation of Section 4(f). Unless Commissioner Cass is so enjoined, Plaintiffs and their members will be irreparably harmed.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

a.     Declare that Defendants Administrator Bhatt and Administrator Bauer are in violation of the Administrative Procedure Act and Section 4(f), and have acted arbitrarily, capriciously, and not in accordance with law;

b.     Vacate FHWA's May 13, 2024, approval of the modified Project;

c.     Issue preliminary and permanent injunctive relief directing Defendants to refrain from any further planning, acquisition of right-of-way, financing, contracting, or construction of the Project that is not fully compliant with the requirements of the Administrative Procedure Act and Section 4(f);

d.     Award the cost of this action, including reasonable attorney's fees, costs, and disbursements pursuant to applicable laws, including but not limited to the Equal Access to Justice Act; and

e.     Award such other relief as this Court may deem appropriate.

Dated: August 26, 2024

Respectfully submitted,

**COMMITTEE TO SAVE THE DERRY RAIL TRAIL TUNNEL**

**RAILS TO TRAILS CONSERVANCY**

By their attorneys,

*/s/ Mikayla C. Foster*
Mikayla C. Foster (N.H. Bar 272335)
Cynthia D. Vreeland (*pro hac vice* application
    forthcoming)
Charles C. Kelsh (*pro hac vice* application
    forthcoming)
John F. Saylor (*pro hac vice* application
    forthcoming)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel: 617-526-6000
Fax: 617-526-5000
mikayla.foster@wilmerhale.com

*Attorneys for Plaintiffs Committee to Save the
    Derry Rail Trail Tunnel and Rails to Trails
    Conservancy*

*/s/ Andrea C. Ferster*
Andrea C. Ferster (*pro hac vice* application
    forthcoming)
Attorney at Law
68 Beebe Pond Road
Canaan, NY 12029
Tel: 202-974-5142
Cell: 202-669-6311
aferster@railstotrails.org

*Attorney for Plaintiff Rails to Trails Conservancy*